No. 44,224

EARL WILLMETH, JACK BYERS and JOE E. FOBES, *Appellants*, v. NEAL C. HARRIS, V. E. TULLAR and RAY DEITZ, County Commissioners in and for Jewell County, *Appellees.*

(403 P. 2d 973)

Opinion filed July 10, 1965.

*Tweed W. Ross,* of Beloit, argued the cause, and was on the brief for the appellants.

*Robert H. Meyer,* county attorney, and *John S. Dean, Jr.,* of Topeka, argued the cause, and *B. L. Pringle,* of Topeka, *Geo. E. Teeple, L. E. Weltmer, L. M. Weltmer,* and *Roderick E. Weltmer,* of Mankato, were with them on the brief for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This appeal stems from an action to enjoin a tax levy and a bond issue for the purchase of a site and the erection of a long-term care and convalescent county hospital thereon. The plaintiffs challenge not only the validity of the ballot used in the

election but also the validity of the declared results of the election.

On November 6, 1962, at a regular general election, the board of county commissioners of Jewell county submitted to the qualified electors of the county the question of a two-mill levy for the purchase of a site or sites, and the erection of a long-term care and convalescent county hospital thereon in the city of Mankato. The special ballot was submitted pursuant to G. S. 1961 Supp., 19-1801, and in accordance with the provisions of G. S. 1949, 19-1802. According to the official election canvass, the proposition for the levy carried by two votes.

Plaintiffs filed their petition and, as amended, challenged the validity of the election on numerous grounds, the determinative ones being (1) the wording of the ballot was ambiguous, misleading, and not in compliance with the statute, and (2) the votes cast by Clarence L. and Lillian Gates and J. F. Riley were illegal, and improperly counted. From the judgment entered in defendants' favor, plaintiffs appeal.

This is the second chapter in this case, and for further facts see *Willmeth v. Harris*, 193 Kan. 111, 392 P. 2d 101.

As to plaintiffs' first contention that the wording of the ballot fails to comply with G. S. 1961 Supp., 19-1801 *et seq.*, the pertinent part of the ballot reads:

"Shall the following be adopted?

SHALL Jewell County, Kansas, levy a tax of not to exceed two (2) mills on the dollar for any one year, for the purchase of a site or sites, and the erection thereon of a Long Term Care and Convalescent County Hospital, and for the support of the same, in the City of Mankato, Jewell County, Kansas, at a cost of not to exceed $440,000.00, under the authority of Sections 19-1801 *et seq.* of the 1961 Supplement to the General Statutes of Kansas for 1949, $220,000.00 of said amount to be obtained through a grant from a federal agency and-or donations from persons, firms, organizations, corporations or societies?

"To vote in favor of the levy, make a cross 'X' mark in the square after the words 'FOR THE LEVY.'

"To vote against the levy, make a cross 'X' mark in the square after the words 'AGAINST THE LEVY.'

"FOR THE LEVY ☐

"AGAINST THE LEVY ☐"

The applicable portions of section 19-1801 controlling in the instant case provide for the establishment and maintenance of a public hospital in certain counties, and whenever the board of county commissioners is presented with a valid petition which sets forth the location, asks that a tax not exceeding two mills on the

dollar per year be levied for the establishment and maintenance of a public hospital at a place in the county named therein, and states the maximum amount of money to be expended in purchasing or building said hospital, such board of commissioners shall submit the question to the qualified electors of the county at the next general election. G. S. 1949, 19-1802, provides that the board of commissioners shall submit to the qualified electors the question whether there shall be levied upon the assessed property of the county a tax of _____ mills on the dollar for the purchase of real estate for hospital purposes, for the construction of hospital buildings and for maintenance of the same; that the ballots shall be printed with a statement substantially as follows: " 'For a _____ mill tax for a public hospital and for maintenance of same. Yes. ☐ No. ☐.' "

The mentioned statutes contemplate that when a special proposition is submitted to the qualified electors for a vote, the recital on the ballot shall clearly state the substance of the proposition. (See *Board of Education v. Powers,* 142 Kan. 664, 51 P. 2d 421.)

In the instant case the electors were informed the hospital's total cost would not exceed $440,000 and that $220,000 of this amount was to be obtained from a federal agency or by donations. In view of G. S. 1949, 19-1812 and 19-1815a, which permit the acceptance of donations from individuals or organizations and aid from the United States Government or any agency thereof, we are unable to see how the electors could be misled about the recited proposition. There was nothing misleading in this statement, for the electors knew at all times what the total cost of the proposed hospital would be and that the bond issue under consideration was for $220,000.

The plaintiffs, in support of their contention, direct our attention to the phrase "Long Term Care and Convalescent County Hospital" appearing on the ballot. They contend the expression is misleading and means to most people a nursing home, an old folks home, or a home for domiciliary care. The plaintiffs' argument loses its force when we consider the phrase is followed by the words "County Hospital." "Long Term Care and Convalescent" is descriptive only, in that it amplifies the type of service to be rendered to hospital patients and, therefore, is not indicative of an old folks home or a home for domiciliary care.

We have been unable to find, and plaintiffs have failed to cite,

any authority to sustain their contention that this descriptive phrase means domiciliary care in the nature of a home for the aged. The phrase is mere surplusage at most, and it cannot be said the voters were misled or deceived by it.

Plaintiffs next contend the trial court erred in finding the absentee ballots of Clarence and Lillian Gates were legally cast and should be counted.

It is conceded the Gateses made the necessary stautory affidavits and legally cast their absentee ballots in good faith. Plaintiffs' contention is such ballots are illegal and should not be counted inasmuch as the Gateses were not, within the meaning of the statute, absent on election day from the state of Kansas at all times while the polls were open. The question proposed by plaintiffs relates to the interpretation of the provisions of G. S. 1949, 25-1101, the pertinent part of which provides:

"It shall be lawful for any qualified elector of this state, *who is to be absent* from the state upon the day of any . . . general election and who is actually so absent during all of the time that polls are open on such day, to vote for county, district and state officers, . . . and questions submitted, such electors having complied with the law in regard to registration . . . ." (Our emphasis.)

We are advised the polls opened in Jewell county at 8:00 a. m. and closed at 6:00 p. m. At 5:00 a. m. the Gateses left the county in which they were eligible to vote on the special ballot en route to Kansas City, Missouri, a distance of approximately 240 miles, to keep an appointment with a doctor and did not return to their home county until 11:00 p. m. They were absent from the county at all hours when the polls were open. It is true that a portion of the time they were in transit from Missouri they were within the state of Kansas, having departed Kansas City, Missouri, at 4:00 p. m., but they were ineligible to vote on the special ballot at any place within the state other than in Jewell county.

It must be conceded that the Gateses had an appointment with a doctor in Kansas City, Missouri, and knew they would be absent from the state on election day and unable to vote in Jewell county. It is not contended that there was any fraud or bad faith on the part of the Gateses in casting their absentee ballots. There is ample evidence to support the district court's findings that the Gateses departed from Jewell county before the precinct polls opened, that they did not anticipate returning to Kansas during election day, that they were absent from the state a greater part

of election day, that they could not vote upon the special hospital levy outside Jewell county, and that they acted in good faith when obtaining and casting their absentee ballots.

The legislature sought to provide a method whereby electors who were necessarily *to be absent* from the state during a general election could cast their ballots. The act, in the absence of fraud or wrongdoing, *does not intend to disfranchise electors who in good faith comply with its provisions.*

It would appear the statute should be construed to carry out the legislative intent, and when such intent is once ascertained, it should be given effect, even though the literal meaning of the words used therein is not followed. Statutes should never be given a construction that leads to uncertainty, injustice, or confusion, if it is possible to construe them otherwise. If the law were as plaintiffs contend, election officials would be put to the duty of ascertaining whether or not electors whose absentee ballots have been transmitted to them in the proper way are, in fact, actually absent, before such officers would be justified in counting such ballots. Such a chaotic condition cannot exist. Every absentee vote would be the subject of much uncertainty, and every election contest would involve the issue of finding out whether or not each absentee voter was, in fact, absent on election day, and this though the voter should otherwise be duly qualified. We think that a construction that leads to such confusion should not be indulged in, unless there is no escape therefrom. For an interesting analysis of the absentee voting statute see *Wood v. The State ex rel. Lee,* 133 Tex. 110, 126 S. W. 2d 4, 121 A. L. R. 931.

Our conclusion is that section 25-1101 should not be given the construction that a ballot cast absentee is illegal if the voter is not actually absent outside the confines of the state during the entire time the polls are open on election day. If a qualified elector of this state, in good faith, intends to or expects to be absent from the state on election day, so as to be unable to vote at his legal voting place within the state, he may, by following the necessary statutory procedure, cast his absentee ballot, and the same should be counted, absent his appearance in person on election day and casting his vote.

Plaintiffs also assert the court erred in finding that the vote of J. F. Riley cast in Brown's Creek township should be counted.

The record discloses Riley had resided in Brown's Creek township since 1937; that he built a house in Jewell in Buffalo township prin-

cipally for the convenience of having his wife near the doctor for more constant medical attention; that he rented his farm to his nephew but reserved a room in the farm home and claimed it as his residence; that he sometimes lived at the farm and ate at the farm. When asked whether or not when he moved into his new home in Jewell he intended to make it his permanent home, Riley replied, "No," and stated it was his intention to keep his Brown's Creek residence as a permanent home.

In the recent case of *Irvin v. Irvin*, 182 Kan. 563, 322 P. 2d 794, it is stated:

"The residence of a person as defined by statute (G. S. 1949, 77-201, *Twenty-third*) is the place adopted by a person as his place of habitation, and to which, whenever he is absent, he has the intention of returning. To accomplish a change of residence there must be not only physical or bodily presence in the new location, but also the intention to abandon the old residence and adopt another in the new location, either permanently or indefinitely." (Syl. ¶ 2.)

In *Arnette v. Arnette*, 162 Kan. 677, 680, 178 P. 2d 1019, this court held that a citizen may change his residence either temporarily or permanently; and whether he does so is determined by his acts and his intentions. The general rule is that when a residence is once shown to have been established it is presumed to continue until it is clearly shown to have been abandoned.

In the instant case the trial court found that Riley was a resident of Brown's Creek township and that his vote cast therein should be counted. There is ample evidence in the record to support the trial court's findings.

Inasmuch as the votes of the Gateses and Riley were legally cast and counted and the question submitted carried by the necessary majority vote, other questions raised become immaterial and need no comment. The judgment of the trial court is affirmed.