No. 45,135

SYLVESTER OCHOA, *Appellee,* v. SWIFT & COMPANY and SECURITY
MUTUAL CASUALTY COMPANY, *Appellants.*

(436 P. 2d 412)

Opinion filed January 27, 1968.

*Robert A. Unverferth,* of Kansas City, argued the cause, and *Edward M. Boddington, Edward M. Boddington, Jr., N. Jack Brown* and *David R. Hills,* all of Kansas City, were with him on the brief for the appellants.

*Albert M. Ross,* of Kansas City, argued the cause, and *Harold K. Wells* and *James M. Barnett,* both of Kansas City, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is a workmen's compensation case involving a workman who contracted an occupational disease (dermatitis) while working for the respondent, Swift & Company.

The appeal is from an order of the district court adopting the findings of the Workmen's Compensation Director and affirming an award of 75% permanent partial disability. There has been no cross-appeal by the workman.

Sylvester Ochoa, the workman, is of Mexican descent and speaks very little English. He had been employed by Swift & Company

for over nineteen years as a general clean up man. His job required him to clean the machines and floors with water and detergents. On this job he wore rubber boots and worked in and around water and detergents.

The employer Swift & Company will be referred to as respondent or as Swift. Swift's insurance carrier, Security Mutual Casualty Company, will be included when the word respondents is used. The workman Sylvester Ochoa will be referred to as the claimant.

In 1962 after seventeen years of service to Swift the claimant contracted dermatitis below his knees. He was hospitalized for a short time and returned to his work. During 1963 and 1964 the dermatitis recurred repeatedly and he was hospitalized for chronic recurrent contact dermatitis two or three times a year. His last work was in September 1964 when the dermatitis recurred and he was hospitalized.

In this appeal from the order of the district court affirming an award based upon 75% permanent partial disability the respondents make two principal contentions. They state in general the evidence is insufficient to sustain the award and specifically there was no evidence that claimant is unable to procure, perform and retain work of the same type and character as he was performing at the time he was afflicted.

The sufficiency of evidence to establish the extent or degree of disability of a workman always remains a question of fact to be determined by the trier of the facts within the limits of the Workmen's Compensation Act. (*Knight v. Hudiburg-Smith Chevrolet, Olds., Inc.,* 200 Kan. 205, 435 P. 2d 3; *Place v. Falcon Seaboard Drilling Co.,* 186 Kan. 523, 350 P. 2d 788.)

The main thrust of respondents' argument is directed toward the testimony of Dr. Winston, a qualified dermatologist, who observed and examined the claimant on two occasions. He testified that he obtained the past history of the disease from the claimant and from various hospital records. He examined the claimant personally and determined claimant had a 50% permanent partial disability from occupational dermatitis which would prevent claimant from obtaining and retaining work of any nature if he would be exposed to dampness or cold.

Respondents contend that much of the doctor's testimony was based upon hearsay, was incompetent and the admission of such evidence is sufficient reason to set aside the award.

This is a workmen's compensation case. K. S. A. 44-523 relates to procedure under the act. The statute provides in pertinent part:

"The committee, arbitrator, director, or court, shall not be bound by technical rules of procedure, but shall give the parties reasonable opportunity to be heard and to present evidence, and shall act reasonably without partiality, . . ."

This court has repeatedly held if the decision is based on substantial and satisfactory evidence, relevant, reasonable and persuasive, though not technically admissible under the rules of evidence governing procedure under the civil code, the decision will be upheld. (*Pence v. Centex Construction Co.*, 189 Kan. 718, 371 P. 2d 100; *Holt v. Peterson Construction Co.*, 134 Kan. 149, 4 P. 2d 428.)

Dr. Winston testified as an expert witness and stated he did not use the diagnosis of any other physician to form his opinion. Respondents' contention on the point is not valid.

Respondents further contend that there was no evidence to support a finding of 75% permanent partial disability since even if the testimony of Dr. Winston was proper he rated the disability at only 50% permanent partial disability and there was no other medical testimony supporting any disability.

In workmen's compensation cases this court has not required the fact finding body to confine its consideration of a workman's injury to testimony of expert medical witnesses. Lay testimony in the record may be considered in connection with medical testimony. (*Mooney v. Harrison*, 199 Kan. 162, 427 P. 2d 457.) This is true in heart cases on such a difficult question as causal connection between the work and the injury. (*Hanna v. Edward Gray Corporation*, 197 Kan. 793, 421 P. 2d 205.)

In addition to the medical testimony there was evidence that for two years preceding the final termination of claimant's employment he suffered from this chronic recurrent affliction, that it cleared up after hospitalization and recurred when he returned to his work. Claimant testified he has never been free of the disease since he left work in September 1964. He uses a medication continuously and without medication the disease gets worse. He further testified that when he works at odd jobs or works around the house his ankles "break out." He has not been employed since September 1964 and was 64 years of age at the time of the hearing. Since September 1964 he attempted to return to work for Swift but they

refused to reinstate him because if he returned to his regular work his legs would "break out" and he would be forced to quit work again.

Considering this testimony along with the medical testimony we believe the finding of 75% permanent partial disability by reason of occupational disease is supported by substantial and satisfactory evidence.

Under respondents' second contention they urge an employer is not required to compensate an employee unless he is disabled from performing the same or similar type of work which he was performing at the time of his injury. They state that claimant is not physically injured and he could perform ordinary janitor work so long as he is not subjected to dampness or moisture.

Assuming but not deciding that the evidence supports this last statement, the respondents overlook that the disability arose by reason of an occupational disease contracted on the job.

The Workmen's Compensation Acts sets forth a specific article relating to occupational diseases. K. S. A. 44-5a02 lists the diseases deemed to be compensable. Dermatitis is included.

K. S. A. 44-5a04 defines disability from occupational diseases. It reads:

"Except as hereinafter otherwise provided in this act 'disablement' means the event of an employee or workman becoming actually incapacitated, partially or totally, because of an occupational disease, from performing his work in the last occupation in which injuriously exposed to the hazards of such disease, and 'disability' means the state of being so incapacitated: . . ."

Therefore a distinction appears in these cases of disability arising by reason of a compensable occupational disease. An explanation of the distinction is set forth in *Knight v. Hudiburg-Smith Chevrolet, Olds., Inc.*, supra. In referring to K. S. A. 44-5a04 and K. S. A. 44-5a19 the court said:

"It would be unwise here to attempt to postulate general rules applicable to all categories of occupational disease cases and we undertake no such endeavor. However, as applied to the facts in the case at bar, and keeping in mind our workmen's compensation statutes are to be construed as a single comprehensive act, we think the foregoing statutory recitation evinces certain legislative intent: Partial disability from occupational disease is compensable; such compensation is payable as provided in the existing workmen's compensation act except as otherwise provided in the occupational disease aspect of the act; the term 'disability' when attributable to occupational disease is separately defined and it means the state of a workman being actually in-

capacitated, partially or totally, because of an occupational disease, from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease; and finally, the capacity of the workman to earn the same or higher wages than he did at the time of the disablement, by whomever employed, *from any trade or employment,* is relatable to the amount of compensation due, to the extent that the award therefor may be cancelled and the compensation ended.

"If the capacity of the workman to earn the same or higher wages than he did at the time of the disablement, from any trade or employment, is relatable to the amount of compensation due, so that the award may be cancelled, then it logically follows that his capacity to earn wages from any trade or employment is relatable to the amount of compensation due, to the extent the award may be diminished accordingly. We believe K. S. A. 44-510 (3) (*c*) (24), as herein construed in connection with other provisions of Chapter 44, Article 5a, provides a practicable and a fair method for such computation.

"We cannot say, then, there is any requirement that the capacity of the workman, after sustaining the allergy, is to be measured by his ability to perform work of the same type and character he was able to perform before he was injured. To that extent, in occupational disease cases such as here, there is deliberate legislative departure from the rule expressed in the *Puckett v. Minter* line of cases applicable to injury by accident. . . ." (p. 209.)

The *Knight* case involved a workman disabled by dermatitis who was working at another job. The special provisions of Chapter 44, Article 5a, were held to require compensation due from any trade or employment to be taken into account to diminish the award accordingly. In the present case the workman was not earning wages and there was no finding by the director which would diminish or terminate the award.

Under the rationale of the *Knight* case and under the plain wording of K. S. A. 44-5a04 disablement upon which disability by reason of an occupational disease is determined relates to the capacity of a workman *to perform his work in the last occupation* in which he was exposed to the hazards of such disease. As pointed out in *Knight* the capacity of a workman, after contracting a compensable occupational disease, is not measured by his ability to perform work of the same or similar type and character as he was able to perform before he was injured.

The award was supported by substantial and convincing evidence. The district court properly applied the statutory rules to determine the extent of claimant's disability.

The judgment is affirmed.