No. 45,126

ALFRED D. BAYLESS, *Appellant*, v. LIST AND CLARK CONSTRUCTION
COMPANY, and TRAVELERS INSURANCE COMPANY, *Appellees*.

(441 P. 2d 841)

Opinion
filed June 8, 1968.

*George E. McCullough*, of Topeka, argued the cause and *W. L. Parker, Jr.,
Robert B. Wareheim, Reginald LaBunker* and *James L. Rose*, all of Topeka,
were with him on the brief for appellant.

*Brock R. Snyder*, of Topeka, argued the cause and *O. B. Eidson, Philip H.
Lewis, James W. Porter, Charles S. Fisher, Jr., William G. Haynes, Charles N.
Henson, Peter F. Caldwell, Roscoe E. Long* and *R. Austin Nothern*, all of To-
peka, were with him on the brief for appellees.

The opinion of the court was delivered by

FROMME, J.: This is an appeal from a judgment denying compen-
sation for disability suffered by a workman because of dermatitis.

The issue on appeal is whether a workman disabled by dermatitis
is barred from recovering compensation by the provisions of K. S. A.
44-5a16.

K. S. A. 44-5a16 provides:

"A person who has suffered disability from dermatitis and has received com-
pensation therefor shall not be entitled to compensation for disability from a
later attack of dermatitis due to substantially the same cause, unless, immedi-
ately preceding the date of the later disablement, he has been engaged in the
occupation to which the recurrence of the disease is ascribed and under the
same employer for at least sixty (60) days."

The appeal turns on the construction of this statute, for the facts
in the case are not in dispute. The claimant worked for List and
Clark Construction Company. The company will be referred to as

the respondent. Claimant worked for respondent in August 1965 as a form carpenter, which job required him to work around wet cement. He contracted dermatitis due to contact with wet cement. He was off work at this time for a period of five days and obtained medical treatment. His condition cleared up and he returned to work for approximately a month when this employment ended. Respondent paid $12.00 for the medical services received by claimant.

Claimant worked at other jobs for a period of seven months and when his old job opened up he returned to work for respondent. After working around wet cement for five days he contracted dermatitis due to substantially the same cause as precipitated the disease eight months before. Claimant terminated his employment and filed a claim against the respondent for disability from dermatitis.

The date of the later disablement was April 6, 1966. Claimant had not been engaged in the occupation to which the recurrence of the disease is ascribed and under the same employer for at least sixty (60) days prior to said date.

The compensation now claimed includes a medical bill of $24.00 and an additional amount for disablement from performing the work of a form carpenter because of dematitis. His average weekly wage while working for the respondent was $158.87. At the time of the hearing before the workmen's compensation examiner he was earning an average weekly wage of $82.00 in other work.

The claim for compensation was denied by the examiner, the director and the district court upon almost identical findings.

The district court found: (1) There were two separate and distinct attacks of dermatitis suffered by claimant, (2) After the first attack claimant received compensation in the form of a medical payment made to the doctor who treated him, (3) After the second attack claimant terminated his employment and has been partially disabled in that he is unable to work around wet cement, and (4) Claimant had not been engaged in the occupation to which the recurrence of the disease is ascribed and under the same employer for sixty days prior to the second attack.

Based upon these findings the court concluded that claimant was not entitled to any compensation from the second attack by reason of K. S. A. 44-5a16.

This appeal followed. The claimant states his position by making a distinction between compensation paid for medical treatment and compensation paid for a disability. He contends the limitation in

the statute against payment of compensation in case of recurrence of the disease relates solely to those cases where the claimant has previously received compensation for disability as distinguished from compensation for hospital and medical services.

The term "disability" as used in the occupational disease sections of the workmen's compensation statute is defined in K. S. A. 44-5a04 as follows:

"Except as hereinafter otherwise provided in this act 'disablement' means the event of an employee or workman becoming actually incapacitated, partially or totally, because of an occupational disease, from performing his work in the last occupation in which injuriously exposed to the hazards of such disease, and 'disability' means the state of being so incapacitated: . . ."

In *Shepherd v. Gas Service Co.*, 186 Kan. 699, 352 P. 2d 48, where the claimant injured his back, this court said:

"While the trial court found that claimant suffered no temporary total or permanent partial disability since he did not miss any work, the court did not find that claimant did not suffer a temporary partial disability. . . . Inherent in the trial court's judgment is a finding that the claimant did suffer a temporary partial disability by reason of the accidental injury and that the same could be corrected by medical and hospital attention. . . ." (p. 702.)

. . . . . . . . . . . . .

"It is a well-established rule in this state that an employee partially incapacitated by an injury from performing his labor does not lose his right to compensation under the workmen's compensation act by remaining in the employment of his employer at his former wage. . . ." (p. 702.)

. . . . . . . . . . . . .

". . . An award providing for the payment of certain medical treatment and care of the injured employee is an award of compensation to him, including all items that go to make up the award for his benefit, to the same extent as an award for certain weekly payments of compensation made in his favor. (Omitting citation.)" (p. 703.)

It is basic in the workmen's compensation act that weekly disability benefit payments are not paid in respect to any injury or disease which does not disable the workman for a period of more than a week. [K. S. A. 44-501, K. S. A. 44-510 (3) (a), (b) and (c).] However, if an employee is unable to work for a fraction of a day because of an injury arising out of and in the course of his employment he is disabled. Any compensation paid under the act, medical or otherwise, is a payment for disability suffered. This court has repeatedly held the furnishing of medical aid to an injured workman is payment of compensation with the same implications as payment of weekly disability awards. (*Richardson v. National Refining Co.*,

136 Kan. 724, 18 P. 2d 131; *Bishop v. Dolese Brothers Co.,* 155 Kan. 288, 124 P. 2d 446; *Dressler v. Dressler,* 167 Kan. 749, 208 P. 2d 271; *Duncan v. Davidson Construction Co.,* 170 Kan. 520, 227 P. 2d 95; *Angleton v. Foster Wheeler Construction Co.,* 177 Kan. 134, 276 P. 2d 325; *Owen v. Ready Made Buildings, Inc.,* 180 Kan. 286, 303 P. 2d 168; *Owen v. Ready Made Buildings, Inc.,* 181 Kan. 659, 313 P. 2d 267; *Shepherd v. Gas Service Co.,* supra.)

The law stated in the foregoing decisions was decided prior to 1953, the effective date of the occupational disease statute. This latter statute was an enlargement of the workmen's compensation act under which the foregoing decisions were rendered. It may be presumed the legislature had these decisions in mind when the occupational disease sections were enacted. (See *Meenen v. Meenen,* 180 Kan. 779, 308 P. 2d 158.)

Statutes should be given a construction to carry out the legislative intent. When such intent is once ascertained it should be given effect even though the literal meaning of the words used therein is not followed. (*Willmeth v. Harris,* 195 Kan. 322, 403 P. 2d 973.)

In *Bright v. Bragg,* 175 Kan. 404, 264 P. 2d 494, this court said:

"This court is committed to the rule of liberal construction of the compensation act in order to award compensation to workmen where it is reasonably possible to do so." (Syl. ¶ 6.)

"Consistency of decisions involving interpretation of the workmen's compensation act cannot be maintained by construing the act liberally in favor of compensation where the workman seeks compensation and strictly against compensation when he seeks damages." (Syl. ¶ 7.)

It is equally clear that consistency of decisions cannot be maintained if the term "compensation" is given one meaning in some sections of the act and a different meaning in other sections of the same act.

In view of what has been said it should be apparent that the intention of the legislature expressed in K. S. A. 44-5a16 was to limit the payment of compensation based upon disablement from dermatitis to those cases in which the workman suffers a first disabling attack of the disease or, in case of a recurrence, when he has been engaged in the occupation to which the recurrence of the disease is ascribed and has been working for the same employer a period of at least sixty days. When the workman has not worked for sixty days for the employer at the time of the recurrence of the disease and has previously received compensation for such disease he is not entitled to any compensation, either by way of medical payments or disability payments.

Although claimant suggests this statute is harsh and unjust it is not for the court to ignore the import of our prior decisions and the plain provisions of the statute.

The judgment is affirmed.

FROMME, J., dissenting: I am unable to agree with the basis and the result of the court's decision in this case. The majority opinion disregards the fundamental differences between a physical injury covered by the workmen's compensation act and a disease as recognized in the occupational disease sections of the act. The majority decision is reached by engrafting the concept of disability in physical injury cases into the occupational disease sections of the act and by disregarding the specific distinction recognized in the occupational disease section of the act ( K. S. A. 44-5a04 ).

When a physical injury occurs it is immediate and apparent. The date of injury and the employer liable are relatively certain. The injury by accident can readily be determined to arise out of and in the course of the employment. The disability begins at the time of the physical injury. ( See *Shepherd v. Gas Service Co.,* 186 Kan. 699, 352 P. 2d 48. )

When a workman contracts dermatitis or other occupational disease such certainty is not possible. The onset of a disease is usually precipitated by conditions not immediately discernible. It may or may not appear to have resulted from the nature of the employment. In event the workman has worked for different employers while being subjected to the conditions giving rise to the disease it becomes difficult to fix the liability for disablement. The exact date the disability occurred may be questionable.

These fundamental differences are recognized and treated in the occupational disease sections of the act. K. S. A. 44-5a01 extends the provisions of the workmen's compensation act to certain occupational diseases listed under K. S. A. 44-5a02. The disease covered must have resulted from the "nature of the employment" and there must be "a particular hazard" of that disease in the employment. The disablement must result within one year after the *last injurious exposure* to the hazard.

The definitions of disablement and disability in occupational disease cases are quite different from the meanings of those terms in physical injury cases. ( See K. S. A. 44-5a04. ) In disease cases the *disability* is attributed to the work in which the workman was *last*

*injuriously exposed*, and the statute recognizes that the incapacity may prevent the workman from performing a particular work although body functions may not otherwise be impaired. The date a workman can no longer perform the work in which he was last exposed is arbitrarily taken as the date of the injury. (See *Knight v. Hudiburg-Smith Chevrolet, Olds., Inc.*, 200 Kan. 205, 435 P. 2d 3, and *Ochoa v. Swift & Co.*, 200 Kan. 478, 436 P. 2d 412.) However, he may have suffered from the disease for weeks or months prior thereto.

These important differences are recognized in K. S. A. 44-5a06. The date of disablement is arbitrarily fixed and liability is placed upon the last employer in whose employment the workman was *last injuriously exposed* to the hazards without any right to obtain contribution from prior employers.

The provisions of K. S. A. 44-5a03 build into the act certain protections for the employer so he may obtain a written statement from the employee before hiring him and thereby know and guard against claims based upon recurring occupational disease. There is no contention in the present case that the claimant made any false representations as to previous disablement and it appears doubtful if the first occurrence of the disease was of such nature and duration as to make him aware of any future disablement. The disease cleared up in five days and he continued to work for approximately a month without suffering a recurrence.

I have no quarrel with the cases cited in the majority opinion. These cases, beginning with *Richardson v. National Refining Co.*, 136 Kan. 724, 18 P. 2d 131 and continuing through *Shepherd v. Gas Service Co.*, supra, are based upon the obvious, *i. e.* that payment of medical expenses is a payment of compensation under the act. The cases do not hold, however, that the term "compensation for medical" is synonymous with "compensation for disability" as used in K. S. A. 44-5a16.

The section of the workmen's compensation act relating to compensation (K. S. A. 44-510) provides for compensation to be paid (1) in the treatment and care of injured employees, (2) where death results from the injury and (3) where death does not result from the injury but there is disability.

In 2 Larson's Workmen's Compensation Law § 57.10 it is said:

"Workmen's compensation benefits fall initially into two categories: benefits to the workman for physical injury, and benefits to dependents in case of death.

Benefits for physical injury, in turn, are of two kinds; wage-loss payments based on the concept of disability; and payment of hospital and medical expenses occasioned by any work-connected injury, *regardless of wage loss or disability."* (Emphasis supplied.)

The legislative purpose in adopting K. S. A. 44-5a16 as part of the occupational disease sections of the act was not directed towards payments for the care and treatment of employees (medical compensation). It refers only to persons who have *suffered disability* from dermatitis and have received *compensation for disability,* as distinguished from compensation for care and treatment. Once having received disability compensation (wage-loss payments) a subsequent employer should not be subjected to a claim for additional disability or wage-loss compensation unless the employee has worked for him at least sixty (60) days.

Such a requirement gives protection to the employer from the effects of the "last injurious exposure" rule which arbitrarily fixes the date of the injury and removes any right of contribution from prior employers. It gives the last employer some assurance that the disability was incurred from a substantial sixty day exposure to the hazard.

Other states require a sixty day exposure with any employer before subjecting the employer to payment of compensation for disability from occupational disease. (2 Larson's Workmen's Compensation Law § 95.24.) Idaho is one of those states and their statute requires the employer in any event to provide reasonable medical treatment. (Idaho Code 72-1210.)

The construction placed upon K. S. A. 44-5a16 in the majority opinion makes this statute harsh and unjust. A workman afflicted with dermatitis for the first time will seldom recognize that the cause of the disease stems from his employment. He will consider it to be a temporary ailment. If he receives medical treatment through his employer he is thereafter precluded from recovering compensation on a second occurrence of the disease. Such was not the intent of the legislature as expressed in the statute. I would reverse the case and remand it to the district court with instructions to determine compensation due for disablement as provided in K. S. A. 44-5a06.

O'CONNOR, J., joins in the foregoing dissent.