No. 44,975

NORMAN KNIGHT, *Appellant,* v. HUDIBURG-SMITH CHEVROLET, OLDS., INC., *Appellee,* and CONNECTICUT FIRE INSURANCE COMPANY, (Insurance Carrier) *Appellee.*

(435 P. 2d 3)

Opinion filed December 14, 1967.

*Donald Shultz,* of Dodge City, argued the cause, and *Jack Shultz,* of Dodge City, was with him on the brief for the appellant.

*Byron G. Larson,* of Dodge City, argued the cause, and *James A. Williams* and *George Voss,* both of Dodge City, were with him on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal in a workmen's compensation proceeding. Computation of the weekly rate of compensation due the workman comprises the only issue.

Entitlement to compensation is based on occupational disease under the provisions of K. S. A. Chapter 44, Article 5a.

In view of the narrow issue here for review the evidence in the record on appeal as to the disease and disability is brief, revealing

only the following: The workman, appellant herein, testified he sustained an allergy to solvents and other materials in his employment with respondent-appellee as a front line, factory-trained General Motors mechanic; that he had no other skills and had only a high-school education. A doctor testified that the allergy was grease and solvent produced, forcing appellant into employment not related to greases and solvents. The record further indicates appellant has no functional disability of any kind other than the allergy.

The parties stipulated that appellant's average weekly wage in his employment with appellee had been $92.09 per week. This was shown to be for a forty-nine hour work week. At the time of the hearing before the examiner appellant was working for the Colby Distributing Company as a warehouseman and truck driver, earning for a similar work week wages at the rate of $85.60 per week.

An employee of the Kansas State Employment Service testified that the average going rate for unskilled labor in the Dodge City area is $1.50 per hour plus overtime for more than forty hours per week; that the rate could go as high as $1.70 per hour.

The workmen's compensation examiner found that appellant had sustained an occupational disease arising out of and in the course of his employment with appellee, resulting in four compensable weeks' temporary total disability and permanent partial disability for 411 weeks, and he awarded compensation for the four weeks' temporary total disability at the rate of $42.00 per week, and for the 411 weeks' permanent partial disability at the rate of $19.25 per week.

The record on appeal does not reveal the action of the workmen's compensation director upon this award. Upon oral argument we are told the director awarded compensation for the 411 weeks' permanent partial disability at the rate of $3.89 per week. Appellant appealed from the director's decision and award to the district court. That court awarded compensation for 411 weeks' permanent partial disability at the rate of $3.89 per week, the rationale of its ruling being stated as follows:

". . . the pertinent statute involved is K. S. A. 44-510, sub-paragraph 24, which provides as follows:

" 'In case of temporary or permanent partial disability not covered by the schedule the workman shall receive during such period of temporary or permanent partial disability not exceeding 415 weeks 60% of the difference between the amount he was earning prior to said injury as in this act provided and the amount he is able to earn after such injury in employment.'

"The Court finds that claimant was able to earn and did earn an average weekly wage of $92.09 for approximately 49 hours of work per week before the injury, and claimant is able to earn and has earned on an average week of 49 hours per week, the sum of $85.60 per week since the injury. The difference between $92.09 and $85.60 is $6.49 and 60% of this amount is $3.89 per week, amounting to a 7% general bodily disability."

Appellant appeals from the district court's finding and award as to his compensation rate for his permanent partial disability.

We should point out there is no cross-appeal by appellee as to the finding that an occupational disease was sustained or as to the award of compensation therefor; further that upon oral argument before us the occupational disease was stated to be in the nature of a dermatitis so as to make it compensable under the workmen's compensation act (K. S. A. 44-5a02, No. 7).

Appellant does not contend he is entitled to an award of compensation for total permanent disability or that his compensation rate should be the maximum $42.00 per week. Rather, he contends he is entitled to an award at the rate of $19.25 per week, as made by the examiner. He argues that under certain of our decisions, the only evidence which can properly be taken into account as to his earning ability on the general labor market is the testimony by the employment service agent to the effect that the average weekly wage for unskilled labor in the particular area was $1.50 per hour or $60.00 per week for a forty hour week; that he is entitled to 60% of the difference between his previous wage with appellee and the later figure ($92.09 minus $60.00 equals $32.09, 60% of which is $19.25). He contends the amount he was actually earning in his new job was wholly immaterial and could not in any event be charged against him in computing his compensation rate. As indicated, appellee maintains the trial court correctly computed the compensation due.

The principal decision relied upon by appellant is *Puckett v. Minter Drilling Co.*, 196 Kan. 196, 410 P. 2d 414. In this case the workman, an oil field driller, sustained an accidental injury, being struck on the head by a heavy bushing, as a result of which he received a concussion, skull fracture and serious injury to his back. He had only an eighth grade education and had always followed occupations requiring a great deal of physical strength and labor. In upholding the trial court's finding of partial disability, expressed first in percentage, and the award based thereon, this court re-

viewed many cases and reaffirmed the applicable principles as follows:

"The purpose evidenced by K. S. A. 44-510 (3) (c) (24) is that an injured workman should be compensated for such loss in earning capacity as results from a permanent partial disability.

"The correct standard for determining the loss in earning capacity of an injured workman is the extent to which his ability has been impaired to procure in the open labor market, and to perform and retain, work of the same type and character he was able to perform before he was injured." (Syl. ¶¶ 1, 2.)

The correctness of the foregoing rules as applied to accidental injury resulting in disability is beyond question. We deal here, however, with an occupational disease and one in which there is no functional disability apart from the allergy attributable to the particular employment. The case is one of first impression.

Prior to 1953 occupational disease was not compensable under our workmen's compensation act (see *Vocke v. Eagle-Picher Co.,* 168 Kan. 708, 215 P. 2d 185), but certain specified categories were made so pursuant to Laws 1953, Chapter 246.

K. S. A. 44-5a01 (*a*), a section of the 1953 enactment, provides in pertinent part:

"Where the employer and employee or workman are subject by law or election to the provisions of the workmen's compensation law, the disablement or death of an employee or workman resulting from an occupational disease as hereinafter listed and defined shall be treated as the happening of an injury by accident, and the employee or workman or, in case of death, his dependents shall be entitled to compensation as provided in the workmen's compensation law except as hereinafter otherwise provided. . . ."

K. S. A. 44-5a02 lists the occupational diseases deemed to be compensable, but nowhere in the act are there any scheduled benefits prescribed for the same as is the case for certain specific injuries mentioned in K. S. A. 44-510 (3) (c) (1-22).

K. S. A. 44-5a04 provides in part:

"Except as hereinafter otherwise provided in this act 'disablement' means the event of an employee or workman becoming actually incapacitated, partially or totally, because of an occupational disease, from performing his work in the last occupation in which injuriously exposed to the hazards of such disease, and 'disability' means the state of being so incapacitated: *Provided,* If the director shall find that the workman has returned to work for the same employer in whose employ he was disabled or for another employer and is capable of earning the same or higher wages than he did at the time of the disablement, or is capable of gaining an income from any trade or employment which is equal to or greater than the wages he was earning at the time of the disablement . . . the director may cancel the award and end the compensation."

K. S. A. 44-5a19 provides an independent method of review of an award or denial of award of compensation for occupational disease. K. S. A. 44-510 (3) (c) (24) (now amended by Laws 1967, Chap. 280, § 4) has already been set forth in the trial court's ruling.

It would be unwise here to attempt to postulate general rules applicable to all categories of occupational disease cases and we undertake no such endeavor. However, as applied to the facts in the case at bar, and keeping in mind our workmen's compensation statutes are to be construed as a single comprehensive act, we think the foregoing statutory recitation evinces certain legislative intent: Partial disability from occupational disease is compensable; such compensation is payable as provided in the existing workmen's compensation act except as otherwise provided in the occupational disease aspect of the act; the term "disability" when attributable to occupational disease is separately defined and it means the state of a workman being actually incapacitated, partially or totally, because of an occupational disease, from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease; and finally, the capacity of the workman to earn the same or higher wages than he did at the time of the disablement, by whomever employed, *from any trade or employment,* is relatable to the amount of compensation due, to the extent that the award therefor may be cancelled and the compensation ended.

If the capacity of the workman to earn the same or higher wages than he did at the time of the disablement, from any trade or employment, is relatable to the amount of compensation due, so that the award may be cancelled, then it logically follows that his capacity to earn wages from any trade or employment is relatable to the amount of compensation due, to the extent the award may be diminished accordingly. We believe K. S. A. 44-510 (3) (c) (24), as herein construed in connection with other provisions of Chapter 44, Article 5a, provides a practicable and a fair method for such computation.

We cannot say, then, there is any requirement that the capacity of the workman, after sustaining the allergy, is to be measured by his ability to perform work of the same type and character he was able to perform before he was injured. To that extent, in occupational disease cases such as here, there is deliberate legislative departure from the rule expressed in the *Puckett v. Minter* line of

cases applicable to injury by accident. This disposes of appellant's only contention of error here.

The parties have engaged in some debate as to whether appellant should be classified as an unskilled, semi-skilled or skilled laborer. We have already stated all the evidence upon that feature of the case and find it unnecessary to make any such classification.

The extent or degree of disability remains always a question of fact to be determined, within the limits of the workmen's compensation act, by the trier of the fact. (*Place v. Falcon Seaboard Drilling Co.*, 186 Kan. 523, 524, 350 P. 2d 788).

Upon the evidence presented we think the trial court properly resorted to and interpreted K. S. A. 44-510 (3) (*c*) (24) in connection with the provisions of K. S. A. Chapter 44, Article 5a, in making its findings and award and that judgment is affirmed.

APPROVED BY THE COURT.