No. 47,249

BETTY J. HILL, *Appellee,* v. GENERAL MOTORS CORPORATION, *Appellant.*

(519 P. 2d 608)

Opinion filed March 2, 1974.

*Terry J. Brady,* of Gage, Tucker, Hodges, Kreamer, Kelly & Varner, of Kansas City, Missouri, argued the cause, and *Thomas M. Van Cleave, Jr.,* and *Bill E. Fabian,* of McAnany, Van Cleave & Phillips, of Kansas City, were with him on the brief for appellant.

*James Yates,* of Kansas City, argued the cause, and *Wyman Wickersham,* of Kansas City, Missouri, was with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: This is a workmen's compensation case in which the employer challenges a compensation award made to an employee under the provisions of the occupational disease statute, K. S. A. 44-5a01 *et seq.*

The claimant, Betty J. Hill, was employed by respondent as an assembly line worker. Her job entailed the placing of molding on back windows of automobiles. Her work required repeated hammering with a rubber mallet. On January 7, 1971, she informed her foreman that her right arm was hurting and she was sent to the plant medical facility for treatment.

The claimant received treatment daily during the first three months of 1971 at respondent's medical facility. From March to July 1971, she was off work for other causes. A short time after she returned to work on the assembly line, she began having difficulty again with her arm. In February 1972, Dr. Kantor, the plant medical

director, referred her to a private physician for treatment. The physician, Dr. Unger, started claimant on a therapy program. Her arm did not respond, and on April 16, 1972, Dr. Unger had claimant admitted to a hospital where she underwent surgery to remove a ligament from her right elbow. The claimant lost nine weeks work as a result of this medical treatment.

When claimant recuperated she returned to work and resumed her task on the assembly line. Later she advised respondent she was physically unable to continue in the job due to the condition of her arm. Respondent then placed her on cleanup duty. Thereafter, her arm continued to hurt and Dr. Unger restricted claimant to light duty. Respondent then found her a job wiping off cars. On June 26, 1972, claimant consulted Dr. Ronald K. Piper, an orthopedic surgeon, who prescribed therapy and cortisone treatments.

In his deposition, Dr. Piper tetstified the claimant was suffering from chronic synovitis which is commonly referred to as "tennis elbow." He estimated the claimant had a seven to eight percent permanent partial loss of use of her right arm as a result of the synovitis condition and the operation. Dr. Peter C. Boylan, an orthopedic surgeon, examined claimant on July 27, 1972, and testified on behalf of the respondent. It was Dr. Boylan's opinion the claimant was suffering a five to seven percent permanent partial loss of use of her right arm as a result of the synovitis condition. Both physicians attributed the synovitis condition to claimant's employment on the assembly line.

The examiner found claimant was suffering from synovitis of her right arm due to repeated use of that arm, and that synovitis was an occupational disease compensable under K. S. A. 44-5a02 (11). He made further findings:

". . . [T]hat the claimant, as a result of her occupational disease (synovitis) lost nine weeks from work at the time she was operated on by Dr. Unger and as a result thereof, claimant is entitled to nine weeks temporary total compensation, payable at the rate of $56.00 per week, for a total of $504.00.

". . . [T]hat as a result of the claimant's condition of her right arm, the claimant has been suffering, is suffering, and will continue to suffer in the future a 7½ per cent functional disability of the right arm, and as a result thereof, claimant is entitled to 15 weeks compensation, payable at the rate of $56.00 per week for a total sum of $840.00, which is also due and owing claimant, in addition to the temporary total compensation. In making this finding, the Examiner is cognizant of the case of Knight vs. Hudiburg-Smith Chevrolet, Olds., Inc., 200 Kan. 205, but is of the opinion that the case does

not govern the instant case because in the Knight case, there was no functional disability, and in the instant case all medical witnesses agree that claimant does have functional disability. In this connection, the record is also clear that the claimant did make a higher wage following her difficulties with her right arm than she was making on January 7, 1971. . . ."

This award was reviewed and sustained by the Director of Workmen's Compensation. (K. S. A. 44-551.) General Motors took an appeal to the district court (K. S. A. 44-556) and that court affirmed the award. The findings of the district court set out in the journal entry include:

"4) That as a result thereof, the claimant has been suffering, is suffering, and will continue to suffer in the future a 7½ percent functional disability of the right arm, and as a result thereof, claimant is entitled to 15 weeks of compensation, payable at the rate of $56.00 per week for a total sum of $840.00."

\* \* \* \* \*

"7) The Court finds that the claimant was paid and is being paid a higher wage following the difficulties with her right arm than she was prior to the time the disability arose on January 7, 1971.

"8) The sole issue is whether the claimant was entitled to an award of compensation for the seven and one-half percent (7½%) functional disability. Respondent contended that under the ruling of *Knight v. Hudiburg-Smith Chevrolet, Olds, Inc.*, 200 Kan. 205, that the claimant was not entitled to any such award. The Supreme Court in its opinion refused to apply the rule governing accidental injuries as expressed in *Puckett v. Minter Drilling Co.*, 196 Kan. 196, and instead held that in occupational disease cases, the award was related to the capacity of the workman to earn the same or higher wages than he did at the time of disablement. The Examiner and the Director distinguished this case, however, on the basis that in that case the claimant did not suffer from any functional disability.

"9) In the *Knight* case, the Court said, 'His (claimant) capacity to earn wages from any trade or employment is relatable to the amount of compensation due, to the extent that the award may be diminished accordingly.' The use of the term may by the Court meant that the Court preferred to limit itself to approving the trial Court's method of computation to the facts in that case and not that the Court intended to extend the rule of that case to all occupational disease cases irrespective of whether permanent, functional disability has resulted or not."

The threshold question presented is whether the claimant is entitled to compensation under provisions of the occupational disease statutes, K. S. A. 44-5a01 *et seq.* In the instant case, the examiner, director and district court found the claimant was earning a higher wage in her employment after the difficulty with her arm than she was earning when the difficulty first developed. General Motors contends that pursuant to K. S. A. 44-5a04 when an employee returns to work, and his or her earnings are equal or higher after con-

tracting an occupational disease than before, the award should be cancelled as a matter of law. The point is not well taken.

The statute in question (44-5a04), in providing for cancellation of an award, states:

". . . [I]f the director shall find the workman has returned to work for the same employer in whose employ he was disabled . . . and is capable of earning the same or higher wages than he did at the time of the disablement, or is capable of gaining an income from any trade or employment which is equal to or greater than the wages he was earning at the time of disablement . . . the director *may* cancel the award and end the compensation." (Emphasis supplied.)

This court has considered an award of compensation under provisions of the occupational disease statute in *Knight v. Hudiburg-Smith Chevrolet, Olds, Inc.,* 200 Kan. 205, 435 P. 2d 3; *Ochoa v. Swift & Co.,* 200 Kan. 478, 436 P. 2d 412; and *Linville v. Steel Fixture Manufacturing Co.,* 205 Kan. 447, 469 P. 2d 312. Both parties to this appeal emphasize the particular disability presented in each of our prior cases. The basis of respondent's argument is the statements in *Knight,* supra, wherein it was said:

". . . The record further indicates appellant has no functional disability of any kind other than the allergy." (l. c. 206.)

\* \* \* \* \*

". . . We deal here, however, with an occupational disease and one in which there is no functional disability apart from the allergy attributable to the particular employment. . . ." (l. c. 208.)

Respondent contends that claimant is suffering from no functional disability other than synovitis, and she has no functional disability apart from the synovitis attributable to the particular employment. The claimant contends our prior decisions are distinguishable in that they dealt with workmen who were incapacitated only as to certain types of employment. Here, the claimant contends she is incapacitated in performing any manual labor requiring the use of her right arm.

While claimant's proposition is amply supported by medical evidence, the distinction does not control the case at bar. The statute in question (44-5a04) requires the director to make certain findings before he may cancel an award of compensation. The last sentence of that statute provides, ". . . the director *may* cancel the award and end the compensation." (Emphasis ours.) This sentence does not command the director to automatically terminate

the award, rather it vests in him discretionary power to cancel or end the award. Our decisions support that conclusion.

In *Knight,* supra, this court stated:

"It would be unwise here to attempt to postulate general rules applicable to all categories of occupational disease cases and we undertake no such endeavor. However, as applied to the facts in the case at bar, and keeping in mind our workmen's compensation statutes are to be construed as a single comprehensive act, we think the foregoing statutory recitation evinces certain legislative intent: Partial disability from occupational disease is compensable; such compensation is payable as provided in the workmen's compensation act except as otherwise provided in the occupational disease aspect of the act; the term 'disability' when attributable to occupational disease is separately defined and it means the state of a workman being actually incapacitated, partially or totally, because of an occupational disease, from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease; and finally, the capacity of the workman to earn the same or higher wages than he did at the time of the disablement, by whomever employed, *from any trade or employment,* is relatable to the amount of compensation due, to the extent that the award therefor *may* be cancelled and the compensation ended.

"If the capacity of the workman to earn the same or higher wages than he did at the time of the disablement, from any trade or employment, is relatable to the amount of compensation due, so that the award may be cancelled, then it logically follows that his capacity to earn wages from any trade or employment is relatable to the amount of compensation due, to the extent the award *may* be diminished accordingly. . . ." (l. c. 209.)

To hold the director *must* cancel or end an award when the conditions of K. S. A. 44-5a04 have been established by an employer negates completely the director's statutorily granted discretion. Discretionary rulings made by the director will not be overturned on appeal in the absence of a clear abuse of discretion. (*Stanley v. United Iron Works Co.,* 160 Kan. 243, 160 P. 2d 708; *Johnson v. General Motors Corporation,* 199 Kan. 720, 433 P. 2d 585; *Leiker v. Manor House, Inc.,* 203 Kan. 906, 457 P. 2d 107.) There was no dispute in the medical evidence which clearly showed the claimant will continue to suffer in the future a seven and one-half percent permanent partial functional disability. We have examined carefully the record and find no abuse of discretion has been established by respondent.

We turn now to the difference in claimant's wages as it relates to the award of compensation. When the claimant's difficulty first arose on January 7, 1971, she was earning a base rate of pay of $4.25 per hour, a cost-of-living allowance of .05 cents per hour,

and a shift premium of 5 percent of her base hourly rate of pay and cost-of-living allowance. After surgery, she returned to work on respondent's assembly line at higher pay rate. Thereafter, she was reassigned to other duties at this higher pay rate.

The award of compensation is governed by K. S. A. 44-5a06 which provides, in part:

"The date when an employee or workman becomes incapacitated by an occupational disease from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease, shall be taken as the date of injury equivalent to the date of accident under the workmen's compensation act. . . ."

\* \* \* \* \* \*

". . . the amount of the compensation shall be based upon the average wages of the employee or workman when last so exposed under such employer. . . ."

The claimant suffers from synovitis due to the repetitive use of her right arm. She was last so exposed to the hazards of such disease when she returned to work on the assembly line at the higher rate of pay. Accordingly, the examiner, director and district court did not err in computing claimant's award based on the higher wage rate.

The judgment is affirmed.