No. 47,345

CLIFFORD A. ROSS, *Appellee,* v. BEECH AIRCRAFT CORPORATION, and
PENNSYLVANIA GENERAL INSURANCE COMPANY, *Appellants.*

(522 P. 2d 369)

Opinion filed May 11, 1974.

*Byron Brainerd,* of Wichita, was on the brief for the appellants.

*John C. Frank, Robert L. Nicklin,* and *Raymond W. Baker,* of Wichita, were on the brief for the appellee.

*Per Curiam:* This is a workmen's compensation case in which the respondent, Beech Aircraft Corporation, and its insurance carrier, Pennsylvania General Insurance Company, appeal from an award by the Sedgwick County District Court (division No. IV) of 25% permanent partial general disability to the claimant, Clifford A. Ross. The claimant has filed a cross-appeal for reinstatement of the 50% permanent partial disability award of the workmen's compensation examiner and director.

The first point asserted on appeal is that the claim for compensation for occupational disease disability was not made within one year as required by K. S. A. 44-5a17:

". . . If no claim for disability or death from an occupational disease be filed with the workmen's compensation director or served on the employer within one (1) year from the date of disablement or death, as the case may be, the right to compensation for such disease shall be forever barred. . . ."

In July of 1967, the claimant was exposed to polyurethane paints in the course of his employment with the respondent. Shortly thereafter he began to cough, his eyes burned, and he had sore throats and headaches. He consulted five physicians over the next two and one-half years including the company doctor. Various diagnoses were given, such as the flu, a cold, or bronchitis. Finally, he was sent to the University of Kansas Medical Center in January 1970. It was then ascertained that his condition was caused by exposure to the chemical toluene diisocyanate, a component of polyurethane paint. This was the first information received by the claimant as to what his trouble really was.

K. S. A. 44-5a04 provides:

". . . '[D]isablement' means the event of an employee or workman be-

coming actually incapacitated, partially or totally, because of an occupational disease, from performing his work in the last occupation in which injuriously exposed to the hazards of such disease, . . ."

The evidence is that claimant became "actually incapacitated" only after he ascertained the cause of his condition in January 1970. His cause of action then arose. Ross's claim was filed on July 20, 1970. The district court, director, and examiner each found from the evidence that the claim was timely filed.

The respondent next claims that since the evidence shows the claimant's earnings were more after the occupational disability than before, the award should be canceled pursuant to K. S. A. 44-5a04. (Citing, *Knight v. Hudiburg-Smith Chevrolet, Olds., Inc.,* 200 Kan. 205, 435 P. 2d 3.)

K. S. A. 44-5a04 states:

". . . If the director shall find that the workman has returned to work for the same employer in whose employ he was disabled . . . and is capable of earning the same or higher wages than he did at the time of the disablement, or is capable of gaining an income from any trade or employment which is equal to or greater than the wages he was earning at the time of disablement . . . the director may cancel the award and end the compensation."

In *Hill v. General Motors Corporation,* 214 Kan. 279, 519 P. 2d 608, we said:

". . . The statute in question (44-5a04) requires the director to make certain findings before he may cancel an award of compensation. The last sentence of that statute provides, '. . . the director *may* cancel the award and end the compensation.' (Emphasis ours.) This sentence does not command the director to automatically terminate the award, rather it vests in him discretionary power to cancel or end the award. . . ." (pp. 282, 283.)

The director did not cancel or end the award and the evidence shows no abuse of discretion.

The claimant asserts on the cross-appeal that the district court erred in finding only a 25% disability, rather than 50% disability as the examiner and director determined.

The district court's finding was based on the testimony of Dr. Kirby who stated that based upon the claimants testimony, that he continued to experience some of the symptoms of his disability a year after ceasing exposure to the paint, the claimant would probably demonstrate symptoms of lung disease intermittently throughout his life. The doctor opined that claimant's degree of permanent disability was roughly 20% to 25%, though in time if the claimant develops severe symptoms his disability could be as

high as 100%. He then stated, ". . . The problem then becomes what proportion of the time is he 20% disabled and what proportion of the time is he 100% disabled." On cross-examination the doctor stated the claimant might be able to engage in some occupations which have no exposure to any irritating fumes or chemicals without any disability.

The claimant argues that since Dr. Kirby testified there could be times when he would have a high percentage of disability the district court's finding of 25% permanent partial disability is error.

There is no evidence the claimant has ever developed any severe symptoms in his new occupation as an auto mechanic. The district court's finding allows the claimant the maximum degree of disability ascertained by Dr. Kirby through his testing. Accordingly, the claimants cross-appeal is denied.

As the findings of the trial court are supported by substantial competent evidence the judgment is affirmed.