No. 48,259

Jacob A. Gross, *Appellant*, v. Herb Lungren Chevrolet, Inc., and Federated Insurance Company, *Appellees*.

(552 P. 2d 1360)

Opinion filed July 23, 1976.

*Thomas C. Boone,* of Hays, argued the cause and was on the brief for the appellant.

*Charles J. Woodin,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

Miller, J.: This is a workmen's compensation proceeding. The claimant, Jacob A. Gross, sustained a "scheduled" injury, a permanent partial loss of the use of his left lower leg, during the course of his employment as a mechanic for Lungren Chevrolet. From an award basing his compensation on a 20% loss of use of the lower leg, he appeals, contending that the award is improperly based on functional rather than work disability.

The issue before us is the meaning of "loss of the use," as that phrase is used in K. S. A. 44-510d (21), now K. S. A. 1975 Supp. 44-510d (*a*) (21).

While at work on September 23, 1973, claimant poked and twisted his left knee. A torn cartilage was diagnosed; this necessitated surgery. Claimant was off work for several months. He then attempted to resume his duties as a mechanic, but was unable to do so because of pain, and because the knee swelled. He has

since retired. His treating physician expressed the opinion that claimant lost 20% of the normal function of his left lower leg. Another orthopedic physician agreed, but he also stated that, considering claimant's occupation as an auto mechanic, he would in his opinion assign a 75% permanent partial disability to the extremity as work disability.

The Examiner found that claimant sustained a 75% work related loss of use of the left lower leg, and awarded compensation accordingly. The employer and its insurance carrier, Federated, sought a review by the Director. He determined that the correct test was the functional impairment of the scheduled member, not the work related impairment. The Director found a 20% permanent partial loss of the use of the lower leg. This finding substantially reduced the compensation awarded by the Examiner. The district court affirmed the Director, and claimant appeals.

Claimant contends that the rule set forth in *Davis v. Winchester Packing Co.*, 204 Kan. 215, 460 P. 2d 617, applies to scheduled injuries and should have been applied here by the Director and the district court. We disagree. *Winchester* involved a permanent partial bodily disability compensable under K. S. A. 44-510e, and not a scheduled injury.

The *Winchester* rule is as follows:

"The correct standard for determining the loss in earning capacity of an injured workman is the extent to which his ability has been impaired to procure in the open labor market, and to perform and retain, work of the same type and character he was able to perform before he was injured. (Citing cases.)" (Syl. 1.)

This rule has been applied exclusively in cases involving general bodily disability, not scheduled injuries. See *Gray v. Beller*, 199 Kan. 284, 428 P. 2d 833; *Mooney v. Harrison*, 199 Kan. 162, 427 P. 2d 457; and *Puckett v. Minter Drilling Co.*, 196 Kan. 196, 410 P. 2d 414.

The statute here involved is K. S. A. 44-510d. It provides in applicable part that:

". . . [C]ompensation is to be paid for not to exceed the number of weeks allowed in the following schedule:

.   .   .   .   .   .   .   .   .   .   .   .   .

"(15) For the loss of a lower leg, sixty percent (60%) of the average weekly wages during one hundred ninety (190) weeks.

.   .   .   .   .   .   .   .   .   .   .   .   .

"(21) Permanent loss of the use of a . . . lower leg . . . shall be equivalent to the loss thereof. For the permanent partial loss of the use of a . . . leg . . . compensation shall be paid at sixty percent (60%) of

the average weekly wages, not in excess of the maximum as provided for in K. S. A. 44-510c as amended per week during that proportion of the number of weeks in the foregoing schedule provided for the loss of such . . . leg . . . which partial loss thereof bears to the total loss of a . . . leg . . . but in no event shall the compensation payable hereunder for such partial loss exceed the compensation payable under the schedule for the total loss of such . . . leg, . . . exclusive of the healing period."

The statute applicable to nonscheduled injuries, where the disability is partial, provides for payment as compensation, a percentage of the difference between the claimant's average weekly wages before the accident and the average weekly wages he is earning or is physically able to earn after the injury. K. S. A. 44-510c; 44-510e. Compensation for scheduled injuries, however, is not dependent upon the difference between wages earned before and after; instead, compensation for scheduled injuries is a fixed percentage of the average weekly wages earned at the time of injury, payable for a fixed period pursuant to the schedule set forth in K. S. A. 44-510d. We have long held that a workman sustaining a scheduled injury is entitled to the compensation provided by the schedule notwithstanding the fact that he may earn as much or more after the accident as before. *Smythe v. Western Star Milling Co.*, 136 Kan. 416, 15 P. 2d 419. This is the general rule. See annotations in 175 A. L. R. 725, 745, and 84 A. L. R. 2d 1108, 1125, 1126.

Compensaton for scheduled injuries is payable in the scheduled amounts, regardless of the type of work being performed and regardless of the wages the workman earns, or is capable of earning, after the injury. Claimant would have loss of use computed on the basis of work disability, *i. e.*, the percentage loss of use to depend upon the peculiar employment of the workman. This would increase claimant's compensation, but it would reduce or eliminate the compensation of those who sustained partial loss of use of scheduled members, but who do not sustain substantial disability in connection with their particular employment. This is not the intent of the statute.

We hold that "loss of the use" as that phrase is used in K. S. A. 44-510d (21) means the impairment of function: the lessening of the ability of an injured member to perform fully those functions which like uninjured members are ordinarily able to perform. Loss of use does not depend upon, nor is it related to, the type of work the employee is called upon to perform in his employment.

Both of the orthopedic surgeons who testified in this case were

of the opinion that claimant has a 20% permanent partial impairment of function of the left lower leg. Under these circumstances the Director and the district court were correct in fixing the partial loss of use at 20%.

The judgment of the district court is affirmed.