No. 48,403
(573 P.2d 1009)

DRUCILLA SCHUBERT, *Appellee,* v. PEERLESS PRODUCTS, INC., AND HOME INSURANCE CO., *Appellants.*

Opinion filed January 21, 1978.

*Garry W. Lassman,* of Wilbert, Lassman, Toburen & Wachter, of Pittsburg, argued the cause and was on the brief for the appellants.

*Walter B. Patterson,* of Fort Scott, argued the cause and was on the brief for the appellee.

*Robert B. Wareheim,* of McCullough, Wareheim & LaBunker, of Topeka, was on the brief for the Kansas Trial Lawyers Association, *Amicus Curiae.*

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal of a workers' compensation claim.

The hearing examiner entered an award for claimant, Drucilla Schubert, for 415 weeks of permanent total general bodily disability. The director modified the award and allowed 71 weeks of temporary total disability followed by a 25% loss of use of the right forearm. On appeal the district court held the claimant was entitled to permanent total general bodily disability not to exceed $50,000.

This is an occupational disease case brought under K.S.A. 1974 Supp. 44-5a01, *et seq.,* where the occupational disease affects only a member of the body as opposed to the body as a whole. The factual situation forces the court to consider legal issues of first impression.

Claimant began working for Peerless Products in 1967 or 1968. Her job involved the continuous use of her hands and wrists, and oftentimes her wrists were bumped or struck as she worked. In June, 1971, claimant began having trouble with her right wrist. On June 28, 1971, she was examined by Dr. Michael McKenna and he noticed a knot on her wrist. She again went to the doctor on May 1, 1972, complaining of wrist pain. The doctor diagnosed the problem as a cyst and gave her a cortisone shot. The pain persisted and her doctor referred her to Dr. Lynn Ketchum at the University of Kansas Medical Center. Claimant stopped working for respondent on April 27, 1973, and remained off work until July 23, 1973. On June 19, 1973, surgery was performed on claimant's injured wrist. The surgery did not improve her wrist and she continued to have difficulties. Despite attempts to shift claimant to jobs less likely to aggravate her condition, respondent was unable to place claimant in a job she could perform and on July 17, 1974, claimant left her employment.

The condition causing claimant's disability was diagnosed as DeQuervain's disease, also known as tenosynovitis of the extensor tendon of the thumb, and was listed as a compensable occupational disease at the time the condition was diagnosed by claimant's doctors. (See K.S.A. 44-5a02, sub-paragraph 11 [repealed L. 1974].)

Prior to the time claimant left her employment the legislature made changes in the benefits due an injured workman covered by the workmen's compensation act. The parties dispute whether the amendments and concomitant benefits apply.

K.S.A. 1974 Supp. 44-505(*c*), effective July 1, 1974, stated:

"This act shall not apply in any case where the accident occurred prior to the

effective date of this act. All rights which accrued by reason of any such accident shall be governed by the laws in effect at that time."

K.S.A. 1974 Supp. 44-5a01(*a*), also effective July 1, 1974, stated:

"Where the employer and employee or workman are subject by law or election to the provisions of the workmen's compensation act, the disablement or death of an employee or workman resulting from an occupational disease as defined in this section shall be treated as the happening of an injury by accident, and the employee or workman or, in case of death, his dependents shall be entitled to compensation for such disablement or death resulting from an occupational disease, in accordance with the provisions of the workmen's compensation act as in cases of injuries by accident which are compensable thereunder, except as specifically provided otherwise for occupational diseases."

Disability caused by occupational disease means actually becoming incapacitated from performing the work in the last occupation held by the employee in which he was injuriously exposed to the hazards of the disease. (K.S.A. 44-5a04.) The date of incapacity because of an occupational disease becomes the date of accident under the act. (K.S.A. 1974 Supp. 44-5a06.)

Considering all these sections together we conclude that in a claim arising from an occupational disease, the date of accident or disablement arises on the date an employee leaves his employment because the occupational disease renders him unable to continue his work. In the case at bar claimant continued and was able to work for respondent until July 17, 1974, when it was determined she was unable to work. That being the case, claimant's "accident" occurred on July 17, 1974, and the provisions of the 1974 amendments applied. (*Ross v. Beech Aircraft Corporation,* 214 Kan. 888, 522 P.2d 369.)

The primary issue on appeal is whether an injury to a workman, caused solely by an occupational disease which affects only a member of the body, is subject to compensation in the same manner as any other injury under the act which is subject to the scheduled injury provisions of the act.

The issue is one of first impression in this state. Each of the parties argues that what we said in *Knight v. Hudiburg-Smith Chevrolet, Olds., Inc.,* 200 Kan. 205, 435 P.2d 3, and *Hill v. General Motors Corporation,* 214 Kan. 279, 519 P.2d 608, supports its position.

In *Knight,* the claimant developed an allergy to solvents and other materials in his employment as a front line, factory-trained General Motors mechanic. His weekly wage was $92.09. Being forced out of this type of work by the allergy, he was working at

the time of the hearing as a warehouseman and truck driver at a weekly wage of $85.60. The claimant had no functional disability other than the allergy.

The trial court applied K.S.A. 44-510, sub-paragraph 24 [Corrick], and fixed claimant's compensation rate at $3.89 per week ($92.09 less $85.60=$6.49; 60% of $6.49=$3.89). The claimant argued on appeal that his present earning ability should be based on the general labor market in the area rather than the amount he was actually earning. He cited *Puckett v. Minter Drilling Co.,* 196 Kan. 196, 410 P.2d 414, in support of his position, wherein this court upheld the trial court's finding of partial disability and reaffirmed the applicable principles, stating:

" 'The correct standard for determining the loss in earning capacity of an injured workman is the extent to which his ability has been impaired to procure in the open labor market, and to perform and retain, work of the same type and character he was able to perform before he was injured.' " (p. 208.)

We disposed of the claimant's argument in the following language in *Knight:*

"We cannot say, then, there is any requirement that the capacity of the workman, after sustaining the allergy, is to be measured by his ability to perform work of the same type and character he was able to perform before he was injured. To that extent, in occupational disease cases such as here, there is deliberate legislative departure from the rule expressed in the *Puckett v. Minter* line of cases applicable to injury by accident. This disposes of appellant's only contention of error here." (pp. 209-10.)

The *Knight* case reaches only two conclusions: (1) The capacity to earn wages from any trade or employment is relatable to the amount of compensation due, and (2) an award for an occupational disease is not measured by the workman's ability to perform work of the same type and character he was able to perform before he was injured.

In *Hill v. General Motors Corporation,* supra, the claimant was engaged in placing molding on the back windows of automobiles, which required repeated use of a hammer with a rubber mallet. She developed chronic synovitis, commonly referred to as "tennis elbow." Following an operation a hearing was held before an examiner resulting in an award of nine weeks of temporary total and, based on a functional disability of 7½%, an additional award of fifteen weeks permanent partial. On appeal, respondent argued that because claimant was earning more after contracting the disease than before, the award should be cancelled, citing K.S.A.

44-5a04. The court concluded the statute provided a discretion in the director and that his refusal to set aside the award was not an abuse of that discretion. It is apparent this award was computed on the basis of a scheduled injury. The question of whether its application was correct was not raised or discussed. Because the issue was not considered we find little precedential value in that opinion on the question we must decide.

K.S.A. 44-5a04 defines disablement and disability and provides:

". . . If the director shall find that the workman has returned to work for the same employer in whose employ he was disabled or for another employer and is capable of earning the same or higher wages than he did at the time of disablement, or is capable of gaining an income from any trade or employment which is equal to or greater than the wages he was earning at the time of the disablement, or shall find that the workman has absented himself and continues to absent himself so that a reasonable examination cannot be made of him by a physician or surgeon selected by the employer, or has departed beyond the boundaries of the United States, the director may cancel the award and end the compensation."

In *Hill,* we considered this statute and held the power of the director to cancel an award and end compensation was discretionary. In *Gross v. Herb Lungren Chevrolet, Inc.,* 220 Kan. 585, 552 P.2d 1360, we concluded that the test for determining an award for a scheduled injury is functional disability. It naturally follows that in the *Gross* factual situation the claimant was entitled to his percentage of functional disability of a member of the body, regardless of his subsequent employment and what he might be earning. The provision of K.S.A. 44-5a04 giving the examiner power to cancel an award is in conflict with our holding in *Gross.* As we view it, the occupational disease section of the workers' compensation act is designed to handle disablement or disability distinctive to occupational diseases, as contrasted with general disability by accident, either scheduled or unscheduled. We reiterate that the occupational disease statute refers back to the workers' compensation act for computation of an award "except as specifically provided otherwise for occupational diseases." Because the occupational disease statute particularizes the discretionary power of the director to cancel an award when the workman is capable of earning the same or higher wages, we believe the provision should be controlling over the conclusion in *Gross* that functional disability controls, regardless of earning capacity.

This position is supported by the following from *Knight:*

"If the capacity of the workman to earn the same or higher wages than he did at the time of the disablement, from any trade or employment, is relatable to the amount of compensation due, so that the award may be cancelled, then it logically follows that his capacity to earn wages from any trade or employment is relatable to the amount of compensation due, to the extent the award may be diminished accordingly. We believe K.S.A. 44-510(3)(c)(24), as herein construed in connection with other provisions of Chapter 44, Article 5a, provides a practicable and a fair method for such computation." (p. 209.)

Although *Knight* did not discuss the issue of the application of scheduled injuries to occupational diseases, we have concluded that the schedule should not be applied. The reason for this is obvious. The application of the schedule carries a requirement of applying functional disability only as stated in *Gross.* We have carefully analyzed respondent's argument that the schedule should be applied to occupational diseases when limited to a member of the body. Such an application would create an injustice, particularly in a situation where a claimant is found to have no functional disability as far as other trades or employments are concerned, but cannot return to the same or like employment. A typical case is an allergy which prevents the employee from returning to a job which aggravates such allergy. We feel the act contemplates a recovery for an occupational disease where there is no functional disability.

It is the holding of this court that scheduled injuries as listed in K.S.A. 1974 Supp. 44-510d (now K.S.A. 1976 Supp. 44-510d) are not applicable to occupational disease cases. If the capacity of the workman to earn wages in any trade or employment is less than the amount the workman was earning at the time of the disability, the difference represents the diminution of earning capacity and is a basis for applying the statutory 66⅔% to reach the compensation rate. (K.S.A. 1974 Supp. 44-510e [now K.S.A. 1976 Supp. 44-510e].)

The trial court's conclusion that "since Claimant is totally and permanently disabled from returning to her former employment, she is permanently and totally disabled as provided by K.S.A. 1975 Supp. 44-510c and (a)(1) of said statute," is manifestly erroneous.

We reverse and remand this case to the district court with directions to return it to the director of workers' compensation for a hearing on the issue of earning capacity of the claimant and, when determined, to compute claimant's recovery in accordance with this opinion.