(718 P.2d 310)

No. 58,535

DOROTHEA SLACK, *Appellant,* v. THIES DEVELOPMENT CORPORATION, and FIREMAN'S FUND INSURANCE COMPANY, *Appellees.*

Opinion filed April 24, 1986.

*Robert L. Feldt,* of Great Bend, for the appellant.

*Harry Bleeker* and *Casey R. Law,* of Turner and Boisseau, Chartered, of Great Bend, for the appellees.

Before ABBOTT, C.J., J. STEPHEN NYSWONGER, District Judge, assigned, and CLARENCE E. RENNER, District Judge, assigned.

ABBOTT, C.J.: This is an appeal by the claimant, Dorothea Slack, in a workers' compensation case. The sole issue on appeal is the calculation of compensation in an occupational disease case under the "diminution of earning capacity" test.

Both sides rely on *Schubert v. Peerless Products, Inc.,* 223 Kan. 288, 573 P.2d 1009 (1978). In *Schubert* our Supreme Court

stated the test for arriving at the compensation rate in an occupational disease case:

"If the *capacity* of the workman to earn *wages* in any trade or employment is less than the amount the workman was earning at the time of the disability, the difference represents the diminution of earning capacity and is a basis for applying the statutory 66⅔% to reach the compensation rate." (Emphasis supplied.) 223 Kan. at 293.

The administrative law judge computed the claimant's pre-disability average weekly wage as follows:

| | |
|---|---|
| Basic Straight Wage | $223.20 |
| (36 hrs. per week @ $6.20 per hr.) | |
| Average weekly overtime | 82.79 |
| ($2,152.45 divided by 26 precd. wks) | |
| Fringe Benefits | 42.50 |
| (Health Insurance) | |
| Total Weekly Earning Capacity | $348.49 |

The director used the basic straight wage of $223.20 per week and disallowed anything for overtime and fringe benefits, apparently because a wage survey indicated overtime and similar fringe benefits were available in other occupations in the area. Both the administrative law judge and the director found a post-disability earning capacity of $152 per week (38 hours per week at $4.00 per hour).

The administrative law judge thus arrived at a weekly compensation rate of $131 per week ($348.49 minus $152.00 equals $196.49. 66⅔% of $196.49 equals $131.00). The director arrived at a weekly compensation rate of $47.47 ($223.20 minus $152.00 equals $71.20. 66⅔% of $71.20 equals $47.47). The trial court adopted the director's opinion.

Respondent Thies Development Corporation contends the director correctly used only the claimant's hourly wage, exclusive of fringe benefits and overtime, in arriving at the compensation rate. Much of its brief is devoted to determining earning *capacity* and it contends that *actual* post-disability earnings are not to be equated with earning *capacity*. The claimant relies on the definition of "wage" under the Kansas Workmen's Compensation Act in support of her contention that overtime and fringe benefits should be included in computing pre-disability and post-disability earning capacity.

Since there is no cross-appeal, we do not have before us the question of whether claimant's capacity to earn wages is less now

than at the time of her disability. Thus, we start with the premise that the claimant has a diminished capacity to earn wages, and the question before us is whether the district court erred, as a matter of law, in excluding overtime and fringe benefits from the computations.

Under the Kansas Workmen's Compensation Act, the compensability of occupational disease is determined in the same manner as cases of accidental injury, unless the statutes otherwise provide. K.S.A. 44-5a01(a) states:

"(a) Where the employer and employee or workman are subject by law or election to the provisions of the workmen's compensation act, *the disablement . . . of an employee or workman resulting from an occupational disease as defined in this section shall be treated as the happening of an injury by accident,* and the employee or workman . . . *shall be entitled to compensation for such disablement . . .* resulting from an occupational disease, *in accordance with the provisions of the workmen's compensation act as in cases of injuries by accident* which are compensable thereunder, *except as specifically provided otherwise for occupational diseases."* (Emphasis supplied.)

The statutes contained in the occupational disease section (K.S.A. 44-5a01 *et seq.*) provide no instruction on computing a worker's compensation. The discretionary power of the director to cancel an award where a worker earns the same or greater *wages* post-disability than pre-disability is the only provision having any relevance to determining compensation in this case. K.S.A. 44-5a04 reads, in pertinent part:

"If the director shall find that the workman has returned to work for the same employer in whose employ he was disabled or for another employer and is capable of earning the same or higher wages than he did at the time of the disablement, or is *capable of gaining an income from any trade or employment which is equal to or greater than the wages he was earning at the time of the disablement,* . . . the director may cancel the award and end the compensation."

See *Hill v. General Motors Corporation,* 214 Kan. 279, 519 P.2d 608 (1974).

This statute addresses the respondent's concern of using *actual* wages to arrive at earning capacity because a worker could seek no work at all or could seek low-paying occupations to ensure the greatest possible compensation rate. However, the director could step in and prevent such practices if a worker were truly capable of working in higher-income occupations.

Since there is no statutory authority in the occupational disease section, the other compensation provisions contained in the

Act are applicable. The "average weekly wage" concept is the formula which is applicable in nearly every instance of computing compensation benefits. There is nothing under Kansas law or in *Schubert* to suggest that the method of determining a worker's average weekly wage is not equally applicable in occupational disease cases. The concept would appear to us to be the basis upon which "diminution of earning capacity" is computed. That is, the difference between pre-disability average weekly wage and the capacity to earn a post-disability average weekly wage is the basis to which the statutory rate is applied.

The use of the term "wage" by the Kansas Supreme Court in *Schubert* to state the "diminution of earning capacity" test does not confine the measurement to a claimant's base hourly wage. K.S.A. 44-511(a)(3) defines "wage" as follows:

"(3) The term 'wage' shall be construed to mean the *total of* the *money* and *any additional compensation* which the employee receives for services rendered for the employer in whose employment the employee sustains an injury by accident arising out of and in the course of such employment." (Emphasis supplied.)

The terms "money" and "additional compensation" are further defined in K.S.A. 44-511(a)(1) and (2) respectively:

"(1) The term '*money*' shall be construed to mean the *gross remuneration, on an hourly, output, salary, commission or other basis, at which the service rendered is recompensed in money* by the employer, but it shall not include any additional compensation, as defined in this section, any remuneration in any medium other than cash, or any other compensation or benefits received by the employee from the employer or any other source.

"(2) The term '*additional compensation*' shall include and mean only the following: . . . employer-paid life insurance, health and accident insurance and employer contributions to pension and profit sharing plans." (Emphasis supplied.)

The claimant's hourly wage and overtime pay are included within the meaning of "money," and claimant's fringe benefit (paid insurance) is included within the meaning of "additional compensation." All three items constitute a part of claimant's wage and, therefore, must necessarily be included in the computation of claimant's average weekly wage, both before and after the disability.

Thus, the director and district court's computation of the pre-disability weekly wage compensation rate was erroneous, since it was limited to the claimant's base hourly wage and did not include overtime or fringe benefits.

An argument can be made that the director and district judge reached the same result by holding similar overtime and fringe benefits are available in the area and within the post-disability capacity of the claimant to earn. The obvious fallacy of that argument is that the director and district court found the base wage post-disability capacity of claimant to be $4.00 per hour. Overtime would thus be $6.00 per hour. Her pre-disability base hourly rate was $6.20 per hour which computes to a $9.30 per hour overtime rate. The actual overtime rate in this case is slightly lower than $9.30 because of the statutory method of computing overtime. (Claimant received a raise during the base period). Thus, by taking the director's and district judge's "short-cut," the claimant would be shorted $3.30 per hour on her overtime pay.

Here, the claimant was a full-time hourly employee as defined by K.S.A. 44-511(a)(5). The method of computing the gross average weekly wage of a full-time hourly employee is set forth in K.S.A. 44-511(b)(4). Since the base wage (computed on a 36-hour work week) is not challenged or questioned by either party, we accept it without comment.

The post-disability average weekly wage has an additional error not raised by the parties. The parties stipulated that the average work week in the post-disability job is 38 hours. It is not fair to offset a loss due to physical impairment by earnings attributable solely to claimant working more hours per week. 2 Larson's Workmen's Compensation Law § 57.33, pp. 10-152, 10-153 (1983). The respondent, of course, would and should be allowed to offset the additional two hours worked at the base wage of $4.00 per hour against the claimant's pre-disability overtime rate of pay. However, the net result will not change because of this error in computation, and we point it out only because it could have an effect in similar cases that do not involve overtime.

We also accept the director's overtime computation because its accuracy is not challenged. That figure is, in our opinion, more accurate than that of the administrative law judge.

The remaining arguments advanced by the respondent on the compensation issue focuses on the "earning capacity" language and consideration of the area wage surveys for other occupations. The director reasoned that overtime and fringe benefits could be

excluded from the computation of earning capacity because the wage summary indicated fringe benefits were provided in most occupations similar to that which the claimant received at her pre-disability occupation. We would not dispute the availability of fringe benefits in other occupations which the claimant may be capable of obtaining. However, there was absolutely no evidence before the director as to the *value* of the fringe benefits obtainable in other occupations. The director's reasoning necessarily presumes that the values of the fringe benefits are equal. Due to the extent and variety of fringe benefits available to an employee and their range in value, such an assumption is not reasonable. Moreover, there was nothing in the wage surveys pertaining to overtime policies and pay. Therefore, the reasoning upon which the director computed earning capacity, comprised solely of the hourly wage, is not supported by the evidence.

In the case of the claimant's post-disability occupation there was no evidence that the claimant could in fact obtain either overtime or fringe benefits. The only evidence of claimant's present earning capacity was the stipulation as to hours and hourly wage at her new job. In short, the claimant's earning capacity at her post-disability occupation was limited to a straight-time wage basis. The only other evidence was claimant's testimony that she was unable to find employment—even at the minimum wage—despite a diligent search for employment.

The respondent vigorously argues that earning capacity for post-disability occupations cannot be equated with actual wages earned. Indeed, Kansas has recognized that the concepts of loss of wage-earning capacity and actual wage loss are distinct and different. See *Crabtree v. Beech Aircraft Corp.*, 229 Kan. 440, 625 P.2d 453 (1981). (The compensation payable for permanent total, temporary total and permanent partial disabilities is for loss of wage-earning capacity.)

In occupational disease cases, a worker's capacity to earn wages from *any* trade or employment is relatable to the amount of compensation due. *Knight v. Hudiburg-Smith Chevrolet, Olds., Inc.*, 200 Kan. 205, 435 P.2d 3 (1967) (a worker's post-disability earning capacity is not confined to work of the same type and character he was able to perform before the occupational disability). Though not conclusive, actual post-disability wages earned may be an evidentiary factor of a worker's earning ca-

pacity. See *Maryland Casualty Company v. Goetz*, 337 S.W.2d 749, 752 (Tex. Civ. App. 1960).

The principle cited by respondent that claimant has the burden of proving the nature and extent of her *disability* for entitlement to compensation is not applicable here. The question of claimant's disability is not an issue on appeal. The method of computing compensation is the sole question. In a discussion of the appropriate measure in occupational disease cases, the following is stated in the Kansas Workers' Compensation Practice Manual (2d ed. 1984) at 6-18:

"If the claimant earns the same or a greater wage after release from treatment for the occupational disease or is capable of earning the same or a greater wage . . . the claimant is not entitled to a permanent award. In these cases, the *employer* is entitled to show the claimant's wage earning capacity either by showing wages earned at any job after release, what type of work and wage the claimant is capable of earning with that employer or the claimant's wage earning capacity in other jobs by the use of vocational experts, employment experts or personnel representatives."

In *American Metals Climax v. Cisneros*, 39 Colo. App. 559, 571 P.2d 315 (1977), *aff'd* 195 Colo. 163, 576 P.2d 553 (1978), the Colorado Court of Appeals held that a claimant who was an underground miner and had contracted silicosis was not required to prove he was not capable of earning a wage in the general labor market at least equal to that earned prior to the occupational disease; claimant proved he was no longer able to work as an underground miner because of occupational disease, and the burden was on the employer to prove that other work was available to claimant in which he could earn wages comparable with those that he would have received as a miner.

The bottom line in the case before us is that the respondent's evidence of the claimant's earning capacity is deficient. While the wage surveys indeed may be evidence of numerous other occupations in the area with wages comparable to claimant's pre-disability job, there was no evidence whatsoever of claimant's ability to perform the other jobs. Moreover, the claimant's post-disability job is evidence of the claimant's earning capacity, as the director and district court apparently found. In the absence of other evidence of claimant's earning capacity, the administrative law judge and director did not err in using claimant's actual wages in computing her post-disability earning capacity. Finally, if the post-disability job was reflective of

claimant's earning capacity, the calculation was confined to the basic straight wage because no evidence of additional compensation or overtime in that job was presented, and the stipulation is prima facie evidence that none was available.

The director has the power to cancel the claimant's award if, at a later date, it is determined that the claimant is capable of a greater earning capacity than she is exhibiting. K.S.A. 44-5a04.

To summarize, the administrative law judge correctly utilized the average weekly wage concept in computing the claimant's earning capacity. Thus, overtime and fringe benefits were properly included in the administrative law judge's computation. The claimant's actual wages in her post-disability occupation were evidence of her earning capacity. In the absence of evidence to demonstrate a higher earning capacity, the administrative law judge was correct in limiting compensation of claimant's post-disability earning capacity to her actual wages. The director and district court were incorrect in their computation of compensation.

The case is reversed and remanded with directions to compute claimant's award based on a gross weekly pre-disability wage of $334.58 (base $223.20; overtime $68.88 [taken from the wage statement]; fringe benefits $42.50) and a post-disability wage of $152.00 per week, a difference of $182.58, for a weekly compensation rate of $121.72.