(125 P.3d 580)
No. 94,179

FRANK GARCIA, *Appellee*, v. TYSON FRESH MEATS, INC., formerly known as IBP, Inc., *Appellant*.

Opinion filed January 6, 2006.

*Douglas M. Greenwald* and *Gregory D. Worth*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellant.

*Michael G. Patton*, of Patton & Putnam, P.A., of Emporia, for the appellee.

Before MARQUARDT, P.J., PIERRON, J., and BUKATY, S.J.

PIERRON, J.: Tyson Fresh Meats, Inc., formerly known as IBP, Inc., (Tyson) appeals from the Workers Compensation Board's (Board) ruling awarding permanent partial disability benefits to Frank Garcia.

Garcia began working for the Tyson on September 19, 1988. For 2 years and 11 months he worked in the intestine room, trimming fat off intestines. The intestines were full of fecal matter and Garcia had to pick the intestines up out of dirty water to trim them. Though Garcia wore gloves, dirty water got inside the gloves and onto his hands.

Garcia began to have problems with his skin in 1991 or 1992. His hands started itching and he reported it to the company nurse. Garcia's hands were weak, painful, itchy, swollen, and discolored. The nurse gave him some cream for his hands, and he was referred to a physician in December 1992. The doctor saw Garcia and also gave him some creams for his hands. Garcia was assigned to a different job, working in the paint room at the plant, due to his problems with his hands. Although the condition did not go away completely, Garcia was able to control the outbreak of symptoms while he was working in the paint room by using the prescribed hand creams.

After 2 years in the paint room, Garcia was transferred back to the intestine room. However, he was given a different position than his previous work. This time he was responsible for cleaning out the insides of the intestines, which once again caused his hands to come into contact with fecal matter. The symptoms in his hands returned, and Garcia again reported the problem to the company

nurse. He was again given hand creams, and eventually the nurse referred him to a doctor.

After approximately 3 years, a physician recommended that Garcia be transferred to a different position. Garcia was assigned to work outside, washing cows with a hose. He continued having some minor troubles with his hands while working in that position. After about a year at this position, Garcia was transferred to the laundry room. He worked there for 4 or 5 years, helping load and unload clothing. Garcia loaded 90 to 100 bags of laundry into each washing machine. These laundry bags contained clothes worn by the workers. The clothing was very dirty and sometimes contained maggots. Garcia had to handle the clothing and may have occasionally come into contact with laundry detergents and soaps. During his 4 or 5 years working in the laundry room, Garcia again reported problems with his hands to his supervisor and the plant nurse. He was once again referred to a physician.

Garcia's current job assignment is cleaning and sharpening knives. At the time of the second regular ALJ hearing on February 6, 2004, Garcia had been doing that job for about 5 years.

Garcia did not have any problems with his hands before he began working at the plant. He attributed his problems with his hands to his original job in the intestine room. The symptoms have come and gone over the years. Garcia claimed he was not able to lift anything heavy because his hands were weak, swollen, discolored, and itchy. He says a doctor instructed him not to lift anything more than 5 pounds. At the first regular ALJ hearing on October 17, 2003, Garcia testified that the plant nurses have given him hand cream twice a day for the past 11 or 12 years at the employer's expense.

Dr. Peter Bieri conducted an evaluation of Garcia at his request. Dr. Bieri examined Garcia, reviewed medical records, and took a medical history from Garcia. Bieri concluded that exposure to chemicals resulted in an injury consistent with contact dermatitis on the dorsal surfaces of both hands. Dr. Bieri testified Garcia had reached maximum medical improvement and his impairment was permanent and stabilized. Dr. Bieri also stated Garcia had a 10% whole-person impairment for disorders of the skin, which was at-

tributable to this injury. The impairment rating was based on the American Medical Association Guides to the Evaluation of Permanent Impairment (4th ed. 1995).

In his amended application for hearing, Garcia alleged that he had a series of injuries or an occupational disease resulting in bilateral dermatitis which began on June 10, 1997. He stated the dermatitis was initially caused by his work in the intestine room and that he had numerous flare-ups and aggravations since the dermatitis first appeared.

The parties stipulated that Garcia earned $9.45 per hour for the pay period ending February 27, 1999, and earned $10.30 for the pay period ending August 23, 2003. Garcia's average weekly wage was $417.35.

The administrative law judge (ALJ) found that Garcia had a functional impairment of 10% to the body as a whole. However, the ALJ also found Garcia had not suffered any loss of earning capacity as he was earning the same or greater wages than he was when the disease first affected his hands and, therefore, he was not entitled to a monetary award for his injury.

Garcia appealed to the Board for review of the ALJ's decision. The Board accepted Dr. Bieri's impairment assessment of 10% whole body permanent partial impairment and found Garcia was entitled to 41.5 weeks of permanent partial disability compensation at the rate of $278.25 per week, resulting in an award of $11,547.38.

On appeal, Tyson argues the Board erred by awarding permanent partial disability benefits when Garcia had not lost any wages as a result of the injury.

The interpretation of statutory provisions in the Workers Compensation Act is a question of law. Under the doctrine of operative construction, the Board's interpretation of the law is entitled to judicial deference. If there is a rational basis for the Board's interpretation, it should be upheld upon judicial review. However, the Board's determination on questions of law is not conclusive and, though persuasive, is not binding on the court. The party challenging the Board's interpretation bears the burden of proving its

invalidity. *Foos v. Terminix*, 277 Kan. 687, 692-93, 89 P.3d 546 (2004).

There is no dispute over the facts in this case. Though Tyson contested the causation and extent of Garcia's injuries below, it appears to concede that Garcia has dermatitis and his dermatitis qualifies as an occupational disease. Tyson's only argument on appeal is that Garcia is not eligible for permanent disability benefits because he has not lost any wages as a result of his dermatitis. Tyson argues that diminution of earning capacity is the test for entitlement to permanent disability benefits in occupational disease cases.

Article 5a of Chapter 44 of the Kansas Statutes Annotated is titled "Occupational Diseases." It is construed as part of the Kansas Workers Compensation Act. K.S.A. 44-5a22. The provisions of the Workers Compensation Act, including article 5a, are to be construed together. K.S.A. 44-574(a).

K.S.A. 44-5a01(a) states that the "disablement" of an employee resulting from an occupational disease shall be treated as the happening of an injury by accident, and the employee shall be entitled to compensation for such disablement in accordance with the provisions of the Workers Compensation Act. Disablement is defined in K.S.A. 44-5a04(a) as "the event of an employee becoming actually incapacitated, partially or totally, because of an occupational disease, from performing the employee's work in the last occupation in which injuriously exposed to the hazards of such disease."

Occupational disease is defined as "a disease arising out of and in the course of the employment resulting from the nature of the employment in which the employee was engaged under such employer, and which was actually contracted while so engaged." K.S.A. 44-5a01(b).

"Permanent partial general disability exists when the employee is disabled in a manner which is partial in character and permanent in quality and which is not covered by the schedule in K.S.A. 44-510d and amendments thereto." K.S.A. 44-510e(a). The Kansas Supreme Court has held that scheduled injuries as listed in K.S.A. 44-510d are not applicable to occupational diseases. *Schubert v.*

*Peerless Products, Inc.*, 223 Kan. 288, Syl. ¶ 2, 573 P.2d 1009 (1978).

Both the ALJ and the Board found that Garcia had dermatitis, that dermatitis was an occupational disease, and that Garcia suffered a disability which resulted in a 10% whole body functional impairment. Both the ALJ and the Board also found Garcia's disability had not resulted in a loss of wages.

K.S.A. 44-510e(a) sets forth the method for computing benefits for temporary and permanent partial disabilities. In cases of permanent partial general disability, the extent of permanent partial disability is the extent to which the employee has lost the ability to perform work tasks, averaged together with the difference between preinjury and postinjury wages. Tyson focuses on this language and argues Garcia is not entitled to any compensation because he has not suffered any wage loss as a result of the dermatitis. However, K.S.A. 44-510e(a) goes on to say: "In any event, the extent of permanent partial general disability shall not be less than the percentage of functional impairment."

K.S.A. 44-510e(a) also states that an employee is not entitled to receive permanent partial disability compensation *in excess of the percentage of functional impairment* as long as the employee earns wages equal to 90% or more of the average weekly wage he or she was earning at the time of the injury. Furthermore, K.S.A. 44-5a04(b) provides a mechanism by which the ALJ has the discretion to cancel an award if the employee has not lost any wages. It states that an ALJ *may* cancel an employee's disability award if the employee has obtained work and is capable of earning the same or higher wages than he or she did at the time of disablement.

Clearly the Workers Compensation Act contemplated the situation where an employee has been disabled but is still capable of earning wages comparable to his or her preinjury wages. In those situations the employee is not entitled to receive compensation which is in excess of his or her functional impairment; however, the employee is not precluded from receiving any compensation for his or her injury. It is not unreasonable to find that 44-5a01(a) requires that an employee who has been affected by an occupational disease caused by employment should be compensated for

the effects of the disease. While a disability may not preclude a worker from earning a comparable wage, it may have a permanent adverse effect on his quality of life or his ability to work at other employment.

The Board's determination that Garcia was entitled to an award to the extent of his functional impairment was a rational interpretation of the Workers Compensation Act.

Affirmed.